IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-CR-358(DNH) |
| v. | |
| MICHAEL SULLIVAN aka MIKEY | GOVERNMENT'S SENTENCING MEMORANDUM |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting that the Court impose a sentence within the defendant's resulting Guidelines range.

## I

## INTRODUCTION

On October 29, 2025, the defendant pled guilty via plea agreement to Counts 6- 13, 15 and 17 of a superseding indictment in this case, which charged him with: a) conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344(2) and 1349 (Count 6) b) aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts 7 through 13 and Count 15) and c) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1957 and 1956(h) (Count 17). The defendant's plea agreement required restitution and a forfeiture money judgment, as well. Dkt. 332 ¶¶ 1d, 1e. The defendant waived his right to appeal any term of imprisonment of 121 months or less. Dkt. 332 ¶ 7.

## II

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

1) **Statutory Sentencing Provisions**

The government agrees with the recitation of the statutory maximum and minimum terms of incarceration, supervised release, and fines set forth in the PSR. (Dkt. No. 353, hereinafter "PSR"

1

¶¶ 120 126, 131)

### 2) Factual Description

The government agrees with the recitation of the relevant factual information regarding the defendant's conduct as set forth in the PSR. PSR ¶¶ 23-52.

### 3) Guidelines Provisions

#### a. Base Offense Level, Specific Offense Characteristics and Reductions

The government agrees with the Probation Office's calculation of the defendant's Offense Level under the Sentencing Guidelines. PSR ¶¶ 57-74. The defendant raises, for the first time, in his sentencing memorandum, that he deserves a three-level reduction for mitigating role;[1] the government disagrees. The United States Sentencing Guidelines under 3B1.2 details Mitigating Role reductions and advises that minimal participants should receive a four-level reduction, minor participants a two-level reduction and, for those falling in between, a three-level reduction. U.S.S.G. § 3B1.2. The U.S.S.G. notes that mitigating role reductions should be reserved for those who are substantially less culpable than the average participant in the criminal activity—and provides an example of a nominee owner who received little personal gain. *See* U.S.S.G. 3B1.2 App. Note 3A. The application notes further clarify that a minor participant is a person is who "less culpable than most other participants in the criminal activity, but, whose role could not be described as minimal." U.S.S.G. 3B1.2 App. Note 5. The guidelines also note that the determination is fact based and often include several factors including the i) the defendant's understanding of the scope and structure of the activity ii) the degree the defendant was involved in planning or organizing the activity iii) the decision making authority of the defendant (or his influence over it) iv) the nature and extent of the defendant's participation in the crimes, including the acts performed and the responsibility and discretion and v) the degree the defendant stood to benefit. *See* 3B1.2 App. Note. 3C.

---

[1] The defendant previously did not raise this objection with probation and initially states within his sentencing memorandum that he agrees with the offense level calculation. Dkt. 365 p. 4. However, later in his memorandum, he asks the Court to consider a three-level reduction. Dkt. 365 p. 5.

A review of the defendant's involvement in the scheme, as detailed both in his plea agreement and in the PSR, illustrates that the defendant is not deserving of a mitigating role adjustment for multiple reasons. First, the defendant knew the details of the scheme including that he was taking stolen bank account information of victims, traveling to the bank, impersonating the victims to open fraudulent bank accounts and, if successful, stealing money from the fraudulent accounts in various ways including withdrawing cash and obtaining money orders. Dkt. 332 ¶¶ 5d, 5e, 5n. Although the defendant was generally provided the account information from other participants and told where to go, the defendant was certainly not substantially less culpable than others in the scheme. In fact, the defendant conduct was the some of the most substantial in the conspiracy. The defendant went into banks, impersonated the legitimate account holders by providing answers about the accounts, opened fraudulent accounts (or tried to), retrieved the newly formed account information and withdrew money from the fraudulent accounts, if opened. *See* Dkt. 332. The defendant opened at least nine fraudulent accounts. Dkt. 332 ¶ 5e. The defendant also traveled in furtherance of the scheme--- traveling from the Broome County area to Michigan, knowing the conduct he was engaging in. *See* Dkt. 332. The defendant continued in the scheme because he was benefitting from it, including being provided drugs, housing and, most importantly, receiving a portion of all the money he was involved in stealing—approximately 10% --- which equated to tens of thousands of dollars. *See* Dkt. 332 ¶ 5q, PSR ¶ 46. The defendant directly benefitted from the more fraudulent conduct and greater losses he was successful at imposing. Other participants in this case, including fellow fraudster co-defendant Kyle Holbrook,[2] were less involved in the fraud and less culpable than the defendant and still did not deserve (and were not granted) a mitigating role adjustment by the Court. In short, the defendant is not akin to nominee owner who received little personal gain *nor* a person who is less culpable than most other participants in the criminal activity. Rather, the defendant entered the conspiracy, knowing the

---

[2] Holbrook was also charged under this case and received a term of 51 months. See Text Minute Entry 5/13/2026.

scope and structure of the scheme, was extremely involved in the scheme by opening and attempting to open multiple fraudulent accounts that formed the basis of the scheme, was personally responsible with losses of at least $290,000 from the victim accounts and benefitted by receiving tens of thousands of dollars. Dkt. 332 ¶¶ 5q-5r. The defendant does not deserve a mitigating role adjustment.

### b. Criminal History Category

The government agrees with the Probation Office's determination of the defendant's criminal history category under the Guidelines. PSR ¶ 82.

### c. Guidelines Range and Sentence

The government agrees with the Probation Office's determination of the Guidelines sentence in this case as 51 to 63 months plus an additional at least 24 months for his eight counts of Aggravated Identity theft, which may run concurrently or consecutively to each other in whole or part, but, which must run consecutively to the guidelines sentence for all other counts. *See* PSR ¶ 120. Therefore, the government contends that the lowest possible sentence the defendant should receive under this analysis would be 75 to 87 months. However, if the Court held the defendant responsible for any of the Aggravated Identity Theft consecutively to each other in whole, the defendant's guidelines range would be at least 99-111 months and would move up exponentially (by up to 24 months for each conviction) depending on the number of counts the Court choose to hold the defendant accountable for consecutively.

### III

### GOVERNMENT'S SENTENCING RECOMMENDATION

From in or about February 2022 to late June 2023, the defendant was an instrumental participant in a sophisticated bank fraud scheme orchestrated by multiple individuals who also operated a substantial a drug trafficking scheme in the Northern District of New York, Kimoy McDonald and Co-Conspirator 1. Dkt. 332 ¶ 5a, PSR ¶¶ 23-25. Particularly, the defendant was

recruited by members of the organization specifically to engage in the financial conspiracy. Dkt. 332 ¶ 5b. As part of the conspiracy, he moved from the Broome County area to Michigan to further the financial scheme. Dkt. 332 ¶¶ 5b-5c. The defendant engaged in the scheme in Michigan until he was caught by Michigan authorities while in a bank, impersonating an innocent victim and attempting to withdraw money unlawfully from their account. PSR ¶ 87.

The scheme generally operated as follows. The defendant was provided personal identifying information (PII) of the victims of the scheme, including their social security numbers and dates of birth. Dkt. 332 ¶ 5d. The defendant knew this information was given to him so he could impersonate the victims in the bank and, ultimately, create fraudulent bank accounts associated with the victims. Id. The defendant did that—opening or attempting to open at least nine fraudulent accounts associated with real people. Dkt. 332 ¶¶ 5d-5e, PSR ¶ 28. After opening the compromised accounts, in at least five of those accounts, the defendant and/or other members of the conspiracy transferred money from the victims' legitimate accounts to the fraudulent accounts the defendant had created. Dkt. 332 ¶ 5e. The defendant and members of the conspiracy then knowingly engaged in money laundering—i.e. moving the money out of the fraudulent accounts into other forms—to attempt to conceal and disguise the nature, location, source, ownership and control of the money by making it more difficult to locate and recover. PSR ¶ 37. The defendant was also directly involved in this portion of the scheme. Dkt. 332 ¶ 5n. Particularly, the defendant often did this by impersonating the victim account holder and making a cash withdrawal from the fraudulent business account. Dkt. 332 ¶¶ 5f, 5h, 5i and 5k. Specifically, the defendant withdrew approximately $21,000 in cash from an account on March 7, 2022, $35,000 in cash from a different account on March 17, 2022, over $40,000 in cash from another account on March 22, 2022 and over $90,000 in cash from a different account on April 1, 2022. Id. The defendant at times engaged in multiple acts on behalf

5

of the conspiracy on the same day—including opening accounts and withdrawing money from different accounts. Dkt. 332 ¶¶ 5f-g, j-k. In additional to his integral role at all the essential phases of the scheme, the defendant also benefitted from the financial conspiracy by receiving free drugs, free housing and a portion—believed to be around 10% --of the money he was actively involved in stealing from victims. Dkt. 332 ¶ 5c, 5q, see PSR ¶ 46.

The defendant has recently asserted, as part of his acceptance of responsibility on this case, that he committed the instant crimes because that he owed money and that individuals "threatened him and made him commit the fraud." PSR ¶ 56. In other words, the defendant is coming very close to asserting a duress defense—that he was "made" to commit the instant offenses. The Second Circuit has detailed that duress is a "…legal excuse for criminal conduct, if 'at the time the conduct occurred, the defendant was subject to actual or threatened force of such a nature as to induce a well-founded fear of impending death or serious bodily harm from which there was no reasonable opportunity to escape other than by engaging in unlawful activity.'" *United States v. Paul*, 110 F.3d 869 (2d Cir. 1997) (*citing United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d. Cir. 1990); *United States v. Mitchell*, 725 F.2d 832, 837 (2d. Cir. 1983) and *United States v. Agard*, 605 F.2d 665, 667 (2d. Cir. 1979)). The Court has noted that duress fails if the defendant "recklessly placed himself in a position in which it was probable that he would be subject to duress." Id. The Second Circuit has further noted that a defendant must present some evidence on each element of the defense, including that there was "no reasonable opportunity to escape the threat other than by engaging in the unlawful activity." *United States v. Caban*, 173 F.3d 89 (2d. Cir. 1999) (finding that it was not error for a district court to prevent a defendant from raising a duress defense when the defendant had several opportunities to end his involvement in the criminal conduct and warn the police).

Despite his clear minimization that he was "made" to commit the instant offenses, the

government assumes that the defendant is attempting to offer this as an "explanation" for his conduct rather than an actual legal assertion of duress for several reasons. First, the defendant did not raise duress as a possible defense at the time of plea. Second, the facts of his case clearly would not satisfy the requirements for this defense (and the rigorous standards established by the Second Circuit for this defense, as articulated, in part, above) as it is contrary to common sense to argue that the defendant was forced to commit a *months long* fraud when he *traveled* from New York to Michigan to engage in the fraud (where he could have reached out for help from law enforcement along his travels), had his *own phone and hotel room* in Michigan (where, again, he could have reached out for law enforcement assistance at any point), repeatedly engaged in the scheme on multiple days (where, again, he could have reached out to law enforcement between or during the events), willingly appeared to engage with his co-conspirators without hesitation and, also, was *paid* in drugs, housing and money to engage in the scheme (contrary to his contention that he was forced to engage in the crime). *See* PSR ¶¶ 27, 41-44, 46; Dkt. 332 ¶¶ 5a, 5c, 5f-5m, 5o-5r. Finally, there is no support for this argument other than the defendant's own statements. To the extent the defendant is, in fact, attempting to raise a legal defense now, raising such a defense would arguably be contrary to the defendant's acceptance of responsibility because it is a denial of essential elements of the offense. *See United States v. Rodriguez-Duran*, 507 F.3d 749, n. 34 (1st Cir. 2007) (citing *United States v. Bello*, 194 F.3d 18, 28 (1st Cir. 1999) and *United States v. Baltas*, 236 F.3d 27, 38 & n. 7 (1st Cir. 2001)).

The government intends to clarify this issue with the defendant, through his counsel, at sentencing. However, to the extent the defendant clarifies at sentencing that he raised this issue *not as a defense* but, rather, to "explain" the background for his conduct, the government is not arguing against acceptance of responsibility (assuming he acknowledges he freely engaged in the

instant conduct without duress). However, we assert such an "explanation" is unavailing and should not be credited as mitigation for the same reasons as detailed above. Particularly, there is no support for his contentions, the defendant engaged in a long-term fraud, traveled on behalf of the fraud, his communications on the fraud - as detailed in the PSR- show his engagement with his co-conspirators without hesitation, and he stood to gain (and did gain) a substantial profit. *See* PSR ¶¶ 27, 41-44, 46; Dkt. 332 ¶¶ 5a, 5c, 5f-5m, 5o-5r. As the defendant admitted in his plea agreement, he received drugs, housing and tens of thousands of dollars of proceeds for his involvement in the scheme. Dkt. 332 ¶ 5q.

In summary, the defendant's presumed "explanation" that he was "made" to commit the instant offenses shows a troubling lack of accountability by the defendant that should be considered when determining the defendant's sentence. Even assuming *arguendo* that the defendant did owe money to individuals and made a choice to engage in this fraud to attempt to absolve some of his debt, his explanation that he committed the offense because he was "made" to do it is a far cry from acknowledging *his own* self-serving conduct and repeated choices to engage in the scheme and profit from the scheme. Further, it highlights the insight (or lack thereof) that he has related to his conduct. This troubling lack of accountability should be considered relevant to warranting a guidelines sentence.

Finally, the defendant's lengthy drug history, failure to successfully comply with supervision and failure to avail himself of treatment--- despite multiple opportunities—also supports a guidelines sentence. The defendant has a long history of drug and alcohol use, starting when he was a teenager. PSR ¶ 105. As detailed in the PSR, the defendant has tried nearly every drug and has rotated between the use of various drugs. See PSR ¶ 105. Starting in his early 20s, the defendant began to have contact with law enforcement that involved substance abuse. PSR ¶ 77. As an illustration, the defendant was first placed on probation in Massachusetts when he

8

was twenty-two for operating a motor vehicle under the influence of alcohol and counterfeiting a motor vehicle document. PSR ¶ 78. The defendant violated probation within nine months; his probation was terminated approximately six to eight months later. Id. The defendant was again placed on probation when he was 33, this time in Florida, for charges related to use of drug paraphernalia after crack pipes were found in a vehicle he was located in. PSR ¶ 79. He was placed on probation for his conviction on that offense and, within two months, his probation was violated after his failure to complete a substance abuse evaluation, failure to complete treatment, failure to attend substance abuse classes and failure to show up for testing (as well as failure to pay Court fees). Id. A warrant was issued. Id. While out on a warrant, the defendant was stopped by police while in a vehicle. PSR ¶ 80. He jumped out of the vehicle he was operating and ran from police, hiding in the woods before ultimately being apprehended. Id. One month later, his probation was revoked and terminated and he was ultimately also convicted of resisting an officer without violence for his flight from police. PSR ¶¶ 79-80. The defendant subsequently had another interaction with the criminal justice system and another opportunity to avail himself of assistance when, approximately five years later, he was convicted of a misdemeanor controlled substance offense at age 38 after alcohol and drugs were found in a vehicle he was associated with. PSR ¶ 81. He received a conditional discharge. Id. at 81. Instead of seeking help, though, the defendant continued to use drugs. PSR ¶ 105. This same pattern has continued to the government's instant case when the defendant was initially released on the instant federal offense and given the chance for treatment. PSR ¶ 16. Although the defendant completed drug detoxification, he failed to meaningfully engage in treatment, missing multiple treatment dates. PSR ¶ 107. In fact, under the rigors of pre-trial supervision, the defendant repeatedly used drugs, even after completing drug detoxification, failed to comply with location monitoring and was ultimately violated. See PSR ¶¶ 17-20. In short, the defendant has

9

had multiple opportunities to seek help for his drug addiction, but, has repeatedly failed to avail himself of those opportunities and has chosen to return to a life of drug addiction where he ultimately puts his needs above others and commits crimes.

The defendant's history and conduct warrant a guidelines sentence. The defendant was an integral participant in a sophisticated financial scheme which resulted in losses to a financial institution of at least $438,630 in stolen customers funds; the defendant was directly involved with at least $290,732 in actual losses. *See* Dkt. 332 ¶¶ 5q- 5r, PSR ¶ 46. Further, the defendant was personally responsible for opening at least 9 fraudulent accounts. Dkt. 332 ¶ 5e. Additionally, the defendant has a lengthy history of his drug offenses driving his criminal history—with little indication of the defendant meaningfully attempting to change the trajectory of his life, despite the help he has been repeatedly offered. Therefore, for the foregoing reasons, a sentence within the resulting Guidelines range is sufficient, but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).[3]

Respectfully submitted this 22nd day of May, 2026.

TODD BLANCHE
Deputy Attorney General

JOHN A. SARCONE III
First Assistant United States Attorney

By: */s/ Kristen Grabowski*
Kristen Grabowski
Assistant United States Attorney
Bar Roll No. 700658

---

[3] The government reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond. *See* Fed. R. Crim. P. 32(i)(1)(c), 32(h). Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendation submitted by the United States Probation Office.